IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ZAFAR IQBAL, M.D.,                    )
                                      )
                     Plaintiff,       )
                                      )
vs                                    )        Civil Action No. 23-832
                                      )
                                      )
BPOA, STATE BOARD OF MEDICINE, et al., )        Magistrate Judge Dodge
                                      )
                     Defendants.      )

## MEMORANDUM OPINION

Plaintiff Zafar Iqbal, M.D. ("Plaintiff" or "Dr. Iqbal") brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 in which he alleges violations of his rights under the First, Fifth and Fourteenth Amendments.

Plaintiff's claims arise out of a November 2, 2020 order of the Pennsylvania Board of Professional and Occupational Affairs ("BPOA") and the State Board of Medicine ("the Board") that revoked his license to practice medicine in Pennsylvania ("the Revocation Order"). The Revocation Order followed from an investigation into two incidents in which Dr. Iqbal made unwanted sexual advances to medical personnel at facilities where he worked, one of which resulted in his conviction on criminal charges. Plaintiff appealed the Revocation Order to the Pennsylvania Commonwealth Court, which affirmed the decision in an order dated April 18, 2022.

Along with the BPOA and the Board, he also asserted claims against Melissa Smith and Kimberly Ferketic, the two victims who testified against him at the BPOA hearing; Donald K. Cokus, a police detective with North Fayette Township Police Department who interviewed him in connection with the Ferketic incident; Curahealth Pittsburgh, LLC ("Curahealth"), the facility

where Ferketic worked; physicians Steven Jones, Phillip Pollice and Michael Weiss, who were involved in the investigation against him; and UPMC Passavant Hospital ("UPMC"), which revoked his privileges to practice at that facility in 2016 following the Smith incident. Finally, he has brought claims against Dr. A.D. Lupariello and Fresenius Medical Care, Inc. ("Fresenius"),[1] which revoked his privileges to practice at their facilities following allegations of sexual harassment by several nurses back in 2003, and American Renal Associates, LLC ("ARA") and Dr. C. Ross Betts, who terminated his minority ownership in two clinics in 2022 as a result of the Revocation Order.

Presenting pending before the Court for resolution are eight motions to dismiss, including a motion filed on behalf of UPMC, Dr. Jones, Dr. Pollice, Dr. Weiss and Melissa Smith (together, the "UPMC Defendants") and motions filed by the remaining defendants.[2] For the reasons below, all of the motions will be granted.[3] Because it would be futile to allow amendment of the dismissed claims, the dismissal will be with prejudice.

## I.    Relevant Procedural History

Plaintiff filed this action on May 17, 2023 (ECF No. 1). Federal question jurisdiction is based on the civil rights claims asserted, 28 U.S.C. § 1331.

The Complaint does not have separate counts. It alleges generally that the actions of Defendants violated Plaintiff's rights under the First Amendment's freedom of speech clause, the

---

[1] This defendant refers to itself as "Bio-Medical Applications of Pennsylvania, Inc., incorrectly identified as 'Fresenius Medical Care' ('BMAPA')." (ECF No. 59 at 1.) To simplify the record, it will be referred to as Fresenius.

[2] An order was entered directing Plaintiff to show cause why Ferketic should not be dismissed based on his failure to effect service upon her (ECF No. 57). In his response (ECF No. 62), Plaintiff indicated that he could not serve Ferketic because he learned that she had died on August 10, 2020. Subsequently, Ferketic was dismissed as a party to this action (ECF No. 93).

[3] The parties have consented to full jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 47, 50, 51-54, 56, 60-61.)

Fifth Amendment[4] and the Fourteenth Amendment's due process clause.

As will be detailed below, Dr. Iqbal's allegations raise the same arguments that he presented to the state agencies and the Commonwealth Court.

As relief, Dr. Iqbal requests the following:

- Reversal of Criminal Conviction at Common Pleas Court CP-02-CR-0003120-2018.

- Restoration of PA and NY Medical License[s] retroactively from 11/02/2020.

- Arbitration to determine financial loss of income since 2015.

- Arbitration to determine punitive damages and compensation for pain and suffering.

- Arbitration for dialysis income lost from [ARA's] removal of my partnership shares.

- Arbitration for loss of income from Fresenius Medical Care, for life ban on privileges.

(*Id.* at 11.)[5]

Plaintiff has attached to his Complaint the Commonwealth Court opinion, the Revocation Order and many other documents related to his case. In response to the motions to dismiss, he has submitted a number of other documents, which will be considered to the extent they are relevant to resolving the motions to dismiss.

All of the motions to dismiss (ECF Nos. 4, 9, 18, 32, 38, 48, 58, 73) have been fully

---

[4] Defendants have addressed the claim as if it were raised solely under the Fifth Amendment's due process clause, which applies only to federal actors, not state actors. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Some of Plaintiff's submissions suggest that he may be raising a claim under the Fifth Amendment's compulsion clause, which states that no one "shall compelled in any criminal case to be a witness against himself ." U.S. Const. amend. V. This provision does apply to state actors. *See Curtis v. Wetzel,* 763 F. App'x 259, 265 (3d Cir. 2019). Nevertheless, for the reasons explained below, it is not necessary to resolve this issue.

[5] On March 25, 2021, the New York Office of Professional Medical Conduct reciprocally revoked Dr. Iqbal's license to practice medicine in that state based on his criminal conviction and the Revocation Order. (ECF No. 42-4 at 4-5.)

briefed (ECF Nos. 5, 10, 11, 14, 19, 35, 39, 42, 49, 55, 59, 63, 74, 75) and are ripe for review.

## II.   Relevant Facts

The factual background that preceded Plaintiff's proceedings before the BPOA was summarized by the Pennsylvania Commonwealth Court in its opinion affirming the Revocation Order:

> Dr. Iqbal has been a licensed medical doctor in Pennsylvania since 1990 and specializes as a nephrologist. In 2003, Dr. Iqbal lost his practice privileges at Fresenius Dialysis Center after allegations of sexual harassment by several nurses. In 2012, after an incident involving unwanted sexual contact with a nurse when he was practicing at UPMC Passavant (UPMC), Dr. Iqbal received a warning but no formal discipline.
>
> On August 1, 2015, while still at UPMC, Dr. Iqbal made unwanted physical advances toward a nurse, [Melissa Smith], in an elevator, by kissing her and putting his tongue in her mouth; she reported it to her superiors the same day. After an investigation and internal proceedings, UPMC's board of trustees revoked Dr. Iqbal's hospital privileges as of March 17, 2016. Then, on November 7, 2017, while working for Curahealth in Oakdale, Dr. Iqbal sexually assaulted a medical records clerk, [Kimberly Ferketic], who reported it to the police on November 9, 2017. Dr. Iqbal was suspended from Curahealth and after a bench trial on November 20, 2018, he was convicted of one count of simple assault (a second-degree misdemeanor) and three counts of harassment (a third-degree misdemeanor); he was sentenced to five years of probation.

*Iqbal v. Bureau of Professional & Occupational Affairs, State Bd. of Med.*, 278 A.3d 409, 2022 WL 1131987, at *1 (Pa. Commw. Apr. 18, 2022) (footnotes and internal references omitted), *appeal denied*, 286 A.3d 709 (Pa. 2022), *cert. denied*, 143 S. Ct. 786 (2023). Plaintiff has attached this opinion to his Complaint. (See ECF No. 1-9 at 3.)[6]

On November 8, 2019, the BPOA charged Dr. Iqbal with seven counts of unprofessional and/or immoral conduct in violation of the Medical Practice Act of 1985, 63 P.S. §§ 422.1 to

---

[6] The Commonwealth Court opinion used the victims' initials to protect their privacy, but since they are named as Defendants here, it is necessary to identify them by their full names.

4

422.53 ("the MPA") and its regulations, based on the Smith and Ferketic incidents.[7] He was advised that his state medical license could be revoked and he could be assessed civil fines of up to $10,000 per violation. (*Id.* at 3-4.) He filed an answer and a two-day hearing was held on February 26 and 27, 2020 before Hearing Examiner Jason C. Guirintano. During the hearing, twelve witnesses presented testimony and Dr. Iqbal (appearing pro se) also testified on his own behalf. (*Id.* at 3.)[8] As noted by the Commonwealth Court in its opinion:

> The hearing officer credited [Smith] and [Ferketic] and described their testimony as consistent, credible and corroborated: "More specifically, their body language, tears, as well as the tone and tenor of [their] voice[s] lent credibility to the veracity of their testimony." The hearing officer also credited the Bureau's additional witnesses and discredited Dr. Iqbal. The hearing officer therefore concluded that Dr. Iqbal had violated the MPA's prohibition on unprofessional and immoral conduct as to the [Smith] and [Ferketic] incidents. Weighing the seriousness of Dr. Iqbal's offenses with the lack of any "meaningful" mitigation evidence, the hearing officer concluded that Dr. Iqbal's medical license should be revoked.

(*Id.* at 5) (footnotes and record citations omitted).

On July 17, 2020, the Hearing Examiner filed an Adjudication and Order, in which he found that Dr. Iqbal violated the MPA on all seven counts and recommended that his license to practice medicine be revoked. On November 2, 2020, the BPOA and the Board adopted this recommendation and entered a Final Memorandum Opinion and Order revoking Dr. Iqbal's license to practice medicine in Pennsylvania. (ECF No. 1-9 at 5, 17-23.)

As alleged in his Complaint, Dr. Iqbal challenges multiple aspects of the hearing, including the following:

---

[7] The Board has the authority to take disciplinary or corrective action against licensed physicians for violating their professional responsibilities. *See* 63 P.S. § 422.41. Specifically, Dr. Iqbal was charged with two counts of violating 63 P.S. § 422.41(8), two counts of violating 49 Pa. Code § 16.61(a), two counts of violating 49 Pa. Code § 16.61(b)(2), and a final count under § 16.61(a) based on his criminal conviction. (ECF No. 10-1 at 14-16.)

[8] The witnesses included Smith, Ferketic, Cokus, Dr. Jones and Dr. Pollice, who are all named as Defendants. Hearing Examiner Guirintano is not named as a defendant.

- Smith's testimony should not have been believed because she waited about one month before reporting the incident to the police.[9]

- Ferketic's testimony should not have been believed because she testified that she gave the police a shirt stained with blood that was transferred to it when Dr. Iqbal grabbed her but the police have no record of receiving this shirt, suggesting that it never existed.[10]

- Cokus's testimony should not have been believed because he admitted lying to Dr. Iqbal about the existence of a video showing that his encounter with Ferketic was not consensual and he admitted tearing up the first statement provided by Dr. Iqbal that was not incriminating.

- Fresenius's revocation of his privileges to practice at its facilities in 2003[11] was improper because he was not provided a hearing in 2003 and because the revocation was based on allegations of sexual harassment that were previously dismissed as unsubstantiated. (ECF No. 1 at 5-6.)

- UPMC "precluded the evidence and a statement to hearing panel on February 24, 2016, and information regarding the attempt to revoke privileges by the hospital in 2008 which was successfully overturned, violated Plaintiff's First amendment rights." (*Id.* at 6.)

Dr. Iqbal appealed the Final Memorandum Opinion and Order to the Pennsylvania Commonwealth Court. On April 18, 2022, the court entered an Opinion and Order affirming the Revocation Order. As noted above, Dr. Iqbal contended in his appeal hat the testimony of Smith, Ferketic and Cokus should have not been believed. Observing that the Hearing Examiner and the Board had rejected these arguments (ECF No. 1-9 at 11-13), the court noted as follows:

> We agree with the Board that the extensive evidence presented by the Bureau and summarized above fully supports the sanction of revocation. That determination was amply supported by substantial evidence of record and was not legally erroneous, arbitrary, or capricious. This result is also consistent with the

---

[9] Plaintiff also contends that Smith's description of having been assaulted in a stationary elevator was not plausible and that UPMC failed to provide a video that would have undermined her account and instead supplied a video with an obstructed view.

[10] On the other hand, Plaintiff also accuses Cokus of having disposed of the blood-stained shirt. (ECF No. 55 at 1, 3, 4.)

[11] As Fresenius notes, the Board stated that "the 2003 finding is irrelevant to these proceedings as [Dr. Iqbal] is not charged with a violation related to that complainant." (ECF No. 1-9 at 22.) Plaintiff acknowledges this in the Complaint (ECF No. 1 at 5).

holdings of [prior cases] where this Court has upheld severe sanctions for doctors found to have violated the MPA and its regulations against unwanted sexual advances and attacks on nurses and support medical staff.

In his brief, Dr. Iqbal again argues that [Smith,] [Ferketic,] and Detective Cokus should not have been found credible. However, credibility determinations are firmly reserved to the factfinder (the Board) and this Court has no basis or authority to overturn such determinations. Moreover, as the hearing officer pointed out, Dr. Iqbal's assertions of inconsistencies in the testimony of both [Smith] and [Ferketic] pertain to minor or ancillary matters rather than these victims' accounts of the incidents themselves, which were the basis of the Board's revocation decision and which were unequivocally found credible, consistent, and corroborated by other evidence of record. Likewise, Detective Cokus was found credible by the hearing officer, and as explained above, this Court may not disturb that determination. Moreover, the hearing officer's opinion does not indicate that Detective Cokus's testimony was relied on for any specific finding or served as anything other than a supplemental or corroborative source to that of [Smith,] [Ferketic,] and the hospital personnel who corroborated their accounts.

(*Id.* at 13-14) (citations omitted).

After the issuance of the Commonwealth Court's decision, Dr. Iqbal petitioned for allowance of appeal in the Pennsylvania Supreme Court, which was denied on October 18, 2022. (ECF No. 1-9 at 31.) *Iqbal v. Bureau of Professional & Occupational Affairs, State Bd. of Med.*, 286 A.3d 709 (Pa. 2022). Dr. Iqbal then sought to appeal the matter to the United States Supreme Court. On February 21, 2023, the Court denied his petition for a writ of certiorari. *Iqbal v. Bureau of Professional & Occupational Affairs, State Bd. of Med.*, 143 S. Ct. 786 (2023).

## III. Discussion

### A. Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the

claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. When dismissing a civil rights case for failure to state a claim, a court typically must allow a plaintiff to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

As indicated above, Dr. Iqbal has attached numerous documents to his Complaint and to his responses to the motions to dismiss and they may therefore be considered without converting the motions into motions for summary judgment. In addition, the Commonwealth Court opinion

is a matter of public record and the Hearing Examiner's Adjudication and Order and the Revocation Order are undisputedly authentic documents on which Plaintiff's claims are based.

**B.  Civil Rights Claims**

Plaintiff asserts that his civil rights have been violated. These claims are made under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

1.  Statute of Limitations

All of the Defendants argue that Plaintiff's claims are untimely because they were not brought within two years of the Revocation Order, which was issued on November 2, 2020.

In general, a statute of limitations is properly raised as an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). That said, the Third Circuit has held that the statute of limitations defense may be raised in a Rule 12(b)(6) motion when the bar is apparent on the face of the complaint. *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir. 2002). *See also Jones v. Bock*, 549 U.S. 199, 215 (2007) (if the allegations of a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.")

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted).

Under Pennsylvania law, the statute of limitations for personal injuries is two years, 42 Pa. C.S. § 5524(2), and that statute is applied to § 1983 claims. *Garvin v. City of Phila.*, 354 F.3d

215, 220 (3d Cir. 2003). Thus, for Plaintiffs' claims to be timely, they must have accrued on or after May 17, 2021, two years before the Complaint was filed.[12]

Plaintiff commenced this action on May 17, 2023. Defendants contend that since Plaintiff did not file suit within two years of the November 2, 2020 Revocation Order, his claims are time-barred. Plaintiff's primary response to this argument is to claim that his causes of action did not accrue until April 18, 2022, the date of the Commonwealth Court's decision. As Defendants note, however, Plaintiff's position is contrary to established case law.

"Federal law governs a cause of action's accrual date. Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

As held by the Court of Appeals:

The accrual date is . . . unaffected by Plaintiffs' administrative appeal. Exhaustion of state remedies is not required where an administrative process is remedial or designed to vindicate a wrong by the state. *O'Neill v. City of Philadelphia*, 32 F.3d 785, 791 n.13 (3d Cir. 1994). Since Plaintiffs were not required to exhaust state remedies before filing this lawsuit, their pursuit of an administrative remedy by appealing the revocation has no effect on the statute of limitations. *See Kelly v. City of Chicago*, 4 F.3d 509, 511-13 (7th Cir. 1993) (holding that § 1983 claim related to revocation of liquor license began to run when license was officially revoked and "the availability of a state appeals process had no different effect on the accrual date").

*Rascoe v. Cody*, 763 F. App'x 228, 232 (3d Cir. 2019). Thus, the fact that Plaintiff elected to

---

[12] Plaintiff acknowledges these points, although he also argues alternatively that only Congress can impose a statute of limitations in a case under § 1983 (ECF No. 11 at 5; ECF No. 35 at 3) and that the Court "should consider the most analogous case to fit the rights of the plaintiff." (ECF No. 42 at 8-9; ECF No. 63 at 5; ECF No. 75 at 6.) Notably, however, this Court is bound by the Supreme Court's holding that it should borrow the most analogous state statute of limitations and by the Third Circuit's holding that the appropriate time period for § 1983 claims in Pennsylvania is two years. To the extent that Plaintiff suggests that he is entitled to invoke some different time period based on the specific considerations of his case, his suggestion lacks foundation.

appeal the Revocation Order to the Commonwealth Court does not delay the accrual of the statute of limitations. Plaintiff knew or should have known the alleged injuries on which his action was based when his license was revoked on November 2, 2020.

In the alternative, to the extent that Plaintiff contends that the Commonwealth Court decision *itself* forms the basis of his claim, this argument is also rejected. Plaintiff's claims arose when his license was revoked, not when an appellate court affirmed this decision. Moreover, this Court lacks the authority to review a decision of the Commonwealth Court because "federal courts are obliged by statute to give full faith and credit to state court proceedings." *Adelphia Gateway, LLC v. Pennsylvania Envtl. Hearing Bd.*, 62 F.4th 819, 825 (3d Cir. 2023) (citing 28 U.S.C. § 1738). Rather, Plaintiff's recourse, which he pursued, was to petition for allowance of appeal with the Pennsylvania Supreme Court. *See* 42 Pa. C.S. § 724(a). His petition was denied. While he disagrees with the outcome of his appeals, this Court is not the forum in which to litigate such issues.

Plaintiff has not named the Commonwealth Court as a defendant nor could he do so. The Commonwealth Court is part of the state's unified judicial system and as such, is an arm of the state for Eleventh Amendment immunity purposes. *See Haagensen v. Supreme Ct. of Pennsylvania*, 651 F. Supp. 2d 422, 432 (W.D. Pa. 2009) ("The Pennsylvania Supreme Court is a court entity of the Unified Judicial System of Pennsylvania and as such it is an arm of the state for Eleventh Amendment immunity purposes."), *aff'd*, 390 F. App'x 94 (3d Cir. 2010).

The only action that occurred *after* the Revocation Order was the ARA's decision on November 20, 2022 to terminate Dr. Iqbal's minority ownership in two clinics.[13] As reflected on

---

[13] ARA and Dr. Betts contend that the Complaint contains no allegations of any actions by them that provide a basis for their inclusion and that the last act cited by Dr. Iqbal is the Revocation Order. (ECF No. 19 at 3, 6; ECF No. 33 at 3, 5-6.) However, the Complaint refers to a "Loss of

the documentation supplied by Dr. Iqbal, that decision was based on an October 31, 2022 letter from the United States Office of the Inspector General of the Department of Health and Human Services and a subsequent letter from the Pennsylvania Department of Human Services. These letters informed Dr. Iqbal that he was excluded from participating in Medicare and Medicaid programs because his medical license had been revoked. (ECF No. 42-4 at 6-9.)[14] Plaintiff does not allege that ARA or its minority owner, Dr. Betts, took any action other than relying on the decisions of various governmental bodies. However, to the extent that Plaintiff's claims against ARA and Dr. Betts relate to the termination of his minority interest on November 20, 2022, any such claim is not time-barred. In any event, as discussed below, ARA and Dr. Betts are not state actors and thus they cannot be held liable under § 1983.

Because Plaintiff did not file suit within two years of the date of the Revocation Order, his claims against all Defendants other than ARA and Dr. Betts are barred by the statute of limitations.[15]

---

Dialysis income 11/18/22" (ECF No. 1 at 10) and requests as relief "[a]rbitration for dialysis income lost from [ARA's] removal of my partnership shares." (*Id.* at 11.) Moreover, these Defendants have acknowledged that ARA terminated Dr. Iqbal's minority ownership in two clinics on November 20, 2022. (ECF No. 19 at 1-2.) Dr. Betts has noted that he is also a minority owner (ECF No. 33 at 1), thereby implying that he did not have the ability to oust Dr. Iqbal. The Court need not resolve this issue.

[14] Neither letter mentions the Commonwealth Court opinion.

[15] It should also be noted that many of the cited actions of various individual Defendants occurred even earlier: Cokus testified at the hearing that he lied to Dr. Iqbal when he interrogated him on November 10, 2017 about the existence of a video showing that his sexual advance on Ferketic was not consensual and Cokus admitted that he tore up Dr. Iqbal's first statement that was not incriminating; Ferketic testified at the hearing that she had given the police her shirt, which had blood transferred to it when Dr. Iqbal assaulted her, but the police had no record of receiving this shirt; Smith testified at the hearing that she contacted the police "a couple of days" after the incident but the record demonstrated that she did not do so until approximately one month later; UPMC revoked his hospital privileges on March 17, 2016; and Dr. Lupariello and Fresenius suspended his privileges to practice at their facilities in 2003.

As discussed below, even if Plaintiff's claims were not time-barred, they are otherwise subject to dismissal with respect to each of the Defendants.

2.  Eleventh Amendment Immunity

The BPOA and the Board argue that they are entitled to immunity under the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal citation omitted).

The Court of Appeals for the Third Circuit has indicated that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. The third exception . . . is the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908).

*Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted).

None of these exceptions apply to the claims asserted by Plaintiff. Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. 1 Pa. C.S. § 2310; 42 Pa. C.S. § 8521(b); *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223, 227 (3d Cir. 2000). Further, as the Supreme Court has held, § 1983 does not abrogate states' sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979). Finally, Plaintiff has not alleged any

claims for injunctive relief against individual state officers.

The BPOA and the Board are executive agencies in the Pennsylvania Department of State. 71 P.S. § 61(a). Therefore, they have a right to assert Eleventh Amendment immunity. *See Shine v. Merenda*, 586 F. App'x 95, 97 (3d Cir. 2014) (affirming the holding of the district court that the "Pennsylvania Department of State, the Pennsylvania Bureau of Professional and Occupational Affairs, and the Pennsylvania State Police are immune from suit under the Eleventh Amendment."); *Glunk v. Pennsylvania State Bd. of Med.,* 687 F. App'x 196, 202 (3d Cir. 2017) (doctor filed claims arising out of the 60-day suspension of his license, but the "District Court correctly dismissed the second amended complaint as to the State Board of Medicine and Department of State [because] . . . they are immune from a suit for money damages under the Eleventh Amendment.")

In opposing this argument, Plaintiff contends that these Defendants "waived" their Eleventh Amendment immunity by filing a document in the United States Supreme Court on January 19, 2023 that included the word "waiver" stamped across the top. (ECF No. 75 at 4.) This document merely stated that a Senior Deputy Attorney General of Pennsylvania was entering his appearance as counsel in that case. (ECF No. 1-3 at 22; ECF No. 77 at 15.) It did not represent consent to a waiver of Eleventh Amendment immunity. In any event, no such waiver has been asserted here.

Because the BPOA and the Board are entitled to immunity under the Eleventh Amendment, they are entitled to dismissal with prejudice on this ground.

3. Lack of State Action

Other than the BPOA, the Board and Cokus, all of the other Defendants assert that they cannot be liable under § 1983 because they are not state actors.

14

The moving Defendants are private individuals (doctors and a nurse), private companies and a hospital. Therefore, as the moving Defendants correctly assert, they cannot be sued under § 1983 because they are not state actors. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'")

Plaintiff fails to allege any facts that would suggest that any of these Defendants are employed by the state or have authority by virtue of state law. Instead, Plaintiff suggests that the Commonwealth Court's discussion and holding somehow transformed Defendants' conduct into "state action." In support of this premise, he highlights the court's statement that its "review is therefore limited to determining whether constitutional rights have been violated" (ECF No. 1-9 at 8). As this quotation makes clear, however, the court merely stated that it was determining whether Plaintiff's constitutional rights had been violated by the actions of the Defendants and concluded that no such violations had occurred. And Plaintiff cites no authority for his far-fetched theory that the Commonwealth Court's decision retroactively provides "color of law" for the actions of private individuals and organizations.

Plaintiff also argues that a private individual may be held liable if he is a willful participant in joint activity with the state or its agents. *Dennis v. Sparks*, 449 U.S. 24, 29 (1980). *See also McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994) ("State action may be found if the private party has acted with the help of or in concert with state officials.") That said, Plaintiff has not pointed to any "joint activity" with the state or its agents. Rather, he has merely alleged that various private individuals falsely testified against him at a hearing before a state agency. Even accepting his allegations as true, this does

not represent joint activity with the state or a state agent. *See, e.g.*, *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) ("To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights.") Plaintiff has not alleged that any private individual reached an understanding with the state or a state agent to deprive him of his constitutional rights.

Therefore, because all Defendants other than the BPOA, the Board and Cokus are not state actors, they will also be dismissed with prejudice.

    4.   Issue Preclusion

Cokus argues that the issues Plaintiff is raising have already been decided in previous proceedings and are therefore barred from relitigation based on the doctrine of issue preclusion. Plaintiff has not responded to this argument.

The Court of Appeals recently reiterated that federal courts "look to state law to determine when to apply this doctrine" and Pennsylvania courts required the party asserting issue preclusion to establish four elements:

> (1) an issue decided in a prior action is identical to the one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Adelphia Gateway,* 62 F.4th at 826 (quoting *Rue v. K-Mart Corp*., 713 A.2d 82, 84 (Pa. 1998)).

As explained above, Plaintiff raised the same identical issues before the Commonwealth Court, and he had a full and fair opportunity to litigate them, but the court rendered a final judgment against him on the merits. Although Cokus was not a party to that case, "a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior

16

proceeding against a different adversary." *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007) (citation omitted). Plaintiff is therefore barred from relitigating them under the doctrine of issue preclusion.[16] Because this issue cannot be cured by amendment, the dismissal of Cokus will be with prejudice.

> 5.  Due Process Claim

Plaintiff's primary contention is that he was denied his right to due process when his medical license was revoked. As the BPOA and the Board argue, however, his claim is belied by the very documents he attached to his Complaint, which demonstrate that he received all the process that he was "due."

> As the Court of Appeals has held:
>
> A plaintiff . . . who brings a § 1983 suit based on a violation of the due process clause must allege and prove five things: (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989).

The BPOA and the Board acknowledge that Plaintiff has adequately alleged that they were acting under color of state law when they deprived him of a constitutionally protected property interest in his medical license. (ECF No. 39 at 12) (citing *Barry v. Barchi*, 443 U.S. 55, 64 (1979), for the holding that a property interest in a state-issued occupational license is sufficient to invoke due process protections).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The determination of what process is

---

[16] As noted by the Commonwealth Court, Plaintiff never appealed from his criminal conviction. (ECF No. 1-9 at 12 n.8.)

'due' is 'not to be found in statutes . . . [but] is a question of federal constitutional law." *McDaniels v. Flick*, 59 F.3d 446, 458 (3d Cir. 1995) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) (citing the "general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.")

As the BPOA and the Board note, the documents submitted by Dr. Iqbal undisputedly show that: he received notice of the charges against him; he had the opportunity to be heard at a two-day hearing in February 2020 and took advantage of this opportunity by appearing at the hearing to present a defense and testify on his own behalf;[17] he was provided with a written opinion containing findings and the reasons for the adjudication;[18] he had the ability to file an appeal with the Commonwealth Court[19] and did so; and he appealed that court's decision to the Pennsylvania Supreme Court and then to United States Supreme Court.

That the Board and the appellate courts to which he appealed did not grant the relief he sought fails to show that he did not receive all appropriate due process protections. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 253 (D.N.J. 2019) (doctor whose medical license was revoked received "the full panoply of due process rights during the disciplinary hearings[:] "He was represented by counsel[,] [h]e submitted evidence and was able to cross-examine the State's witnesses[, and t]he Board and the ALJ issued reasoned, written opinions, and [he] had the

---

[17] See 2 Pa. C.S. § 504 ("No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings."); 2 Pa. C.S. § 505 ("Reasonable examination and cross-examination shall be permitted.")

[18] See 2 Pa. C.S. § 507.

[19] See 2 Pa. C.S. § 702; 42 Pa. C.S. § 763(a)(1).

opportunity to take exception to or appeal them.")[20]

And as the Commonwealth Court noted, it could not reevaluate the credibility of Smith, Ferketic or Cokus as that determination was the responsibility of the fact finder (the Board). Thus, even if Dr. Iqbal had not received all the process which he was "due," he has not explained how this Court could evaluate the credibility of witnesses who offered testimony in a proceeding held three years ago.

Moreover, with respect to Cokus, the Commonwealth Court noted that "the hearing officer's opinion does not indicate that Detective Cokus's testimony was relied on for any specific finding or served as anything other than a supplemental or corroborative source to that of [Smith,] [Ferketic,] and the hospital personnel who corroborated their accounts." (ECF No. 1-9 at 14.)[21]

As conclusively shown by the documents submitted by Dr. Iqbal, he cannot state a claim for denial of his right to due process with respect to the revocation proceedings. Therefore, his claim against the BPOA and the Board will be dismissed with prejudice.

---

[20] Pennsylvania law provides that: "Any party may be represented before a Commonwealth agency." 2 Pa. C.S. § 502. Dr. Iqbal does not contend that he was denied the opportunity to appear before the Board with counsel and thus that the fact that he appeared pro se was his own choice.

[21] As Cokus notes, although Plaintiff alleges that his testimony should not be believed, the record demonstrates that Cokus testified *truthfully* on February 27, 2020 that he *lied* to Dr. Iqbal on November 10, 2017 and did not reveal his deception in the criminal complaint he filed against Dr. Iqbal on November 15, 2017 (ECF No. 1-4 at 7). Plaintiff contends that Cokus's testimony at the hearing retroactively made his prior actions "perjurious" (ECF No. 1 at 5), but there is no support for this theory.

**IV.      Conclusion**

For the reasons explained above, Defendants' motions to dismiss (ECF Nos. 4, 9, 18, 32, 38, 48, 58, 73) will be granted and the Complaint will be dismissed with prejudice.[22]

Appropriate orders will follow.

/s/Patricia L. Dodge

Dated: December 27, 2023                            PATRICIA L. DODGE
                                                    United States Magistrate Judge

---

[22] Some of the Defendants have also argued that Plaintiff has not alleged how his First Amendment rights were violated and that Plaintiff has not alleged specific acts by them that form the basis of his Complaint. The BPOA and the Board alternatively argue that the Court should abstain from exercising jurisdiction and Cokus argues that he is entitled to qualified immunity. The Court need not reach these arguments.